**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DAVID REMSBERG,**

       Plaintiff,

v.                                                       **CIVIL ACTION NO. 3:12-CV-41
(JUDGE GROH)**

**DOCUPAK, a foreign
corporation,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff David Remsburg brings a claim under the West Virginia Wage Payment and Collection Act. This matter is currently before the Court on Defendant Docupak's Motion for Summary Judgment [Doc. 37], filed on December 11, 2012. Plaintiff filed his Response to Defendant's Motion for Summary Judgment [Doc. 43] on January 3, 2013. Defendant filed its Reply [Doc. 63] on January 16, 2013. For the following reasons, this Court **DENIES** Defendant's Motion for Summary Judgment [Doc. 37].

Also pending before this Court is the Plaintiff's Motion for Partial Summary Judgment on Count I and Count II of the Defendant's Counterclaims [Doc. 38], filed on December 11, 2012. Defendant filed its Response to Plaintiff's Motion for Partial Summary Judgment [Doc. 41] on January 2, 2013. Plaintiff filed his Reply [Doc. 62] on January 16, 2013. For the following reasons, this Court **DENIES** the Plaintiff's Motion for Partial Summary

1

Judgment [Doc. 38].

## II. Factual Background

Plaintiff is a resident of Berkeley County, West Virginia. Defendant, Document & Packaging Brokers, Inc. ("Docupak"), is a corporation with its main office located at 100 Gilbert Drive, Alabaster, Alabama. Defendant contracted with the National Guard Bureau to manage a recruitment program known as the Guard Recruiting Assistant Program (G-RAP). In managing G-RAP, Defendant contracted with individuals, known as recruiting assistants, to identify recruits. Defendant had an online application for individuals interested in becoming recruiting assistants. ([Doc. 37-4], p. 15) The online application required applicants to agree or disagree to be bound by an Independent Contractor Agreement ("Agreement"). ([Doc. 37-4], p. 15). Applicants were required to select either the agree or disagree button. ([Doc. 37-4], p. 15). If an applicant agreed to the Agreement, the application process continued. ([Doc. 37-4], p. 15) If an applicant did not agree to the Agreement, then the process stopped. (Doc. 37-4, p. 15). Plaintiff completed the online application process. ([Doc. 37-5], p. 8). However, Plaintiff states he cannot remember whether he clicked a button in the online application process agreeing or disagreeing with the Agreement. ([Doc. 37-5], p. 9).

Plaintiff started the G-RAP program in January 2009. ([Doc 37-5], p. 8). Defendant and Plaintiff admitted that they were parties to a valid contract. ([Doc. 37-2], p. 8). The contract provided that Plaintiff would identify and pre-qualify potential airmen for the regular Air National Guard recruiters and then arrange an initial meeting between the potential recruit and the recruiter. As a recruiting assistant, Plaintiff identified individuals within their sphere of influence to join the Air National Guard. ([Doc. 37-4], p.

6). Once individuals were identified, Plaintiff mentored prospects and maintained contact with them through the Air National Guard process. ([Doc. 37-4], p. 6). The G-RAP provided that "[u]pon verified enlistment, the R[ecruiting] A[ssistant] will receive an initial payment of $1,000, with a second $1,000 payment upon verification of the new recruit's successful shipment to Basic Training or AMS." ([Doc. 37-4], p. 24).

As a recruiting assistant, Plaintiff did not receive any regular wages or employee benefits. ([Doc. 37-5], p. 12). He did not receive an employee handbook from Defendant. *Id.* Also, Plaintiff did not have a supervisor, and he never received any performance evaluations from Defendant. Plaintiff also identified himself, for tax purposes, as self-employed. *Id.* at 13. Plaintiff documented his pay from Defendant on a Form 1099, not a W-2. *Id.* at 8-12. Also, Defendant did not withhold any income tax on Plaintiff's compensation. *Id.* When Plaintiff received payment for his recruits, he received an e-mail that stated in bold print, "The tax implications of a self-employed individual are different from those of an ordinary wage earner. Docupak is required to send a Form 1099-MISC to the IRS and to each Recruiting Assistant that receives a payment of $600 or more." *Id.*

However, Defendant offered training to Plaintiff regarding how to speak with potential recruits, an overview of the G-RAP program, and a review of G-RAP's guidelines. ([Doc. 37-5], p. 13). Also, Plaintiff received a "New Hire Kit" from Defendant. ([Doc. 37-5], p. 13-14). The New Hire Kit contained two polo shirts that said "Guard Recruiting Assistant" and 200 starter business cards. *Id.*

In July 2009, Defendant began investigating Plaintiff's recruiting activities because it believed Plaintiff was not following the G-RAP guidelines. ([Doc. 37-4], p. 4).

3

On July 14, 2009, the West Virginia Air National Guard also investigated suspicious recruiting activities involving the G-RAP program and Plaintiff. ([Doc. 37-3], p.11). As a result of the investigation, Plaintiff was barred from his G-RAP online account in August 2009 after Defendant suspected that Plaintiff was not complying with the program's rules and procedures. ([Doc. 37-4], p. 4).

### III. Procedural Background

Plaintiff filed this action in the Circuit Court of Berkeley County, West Virginia on March 20, 2012. Plaintiff alleged in his Complaint that Defendant violated the West Virginia Wage Payment & Collection Act by failing to pay him certain wages in excess of $26,000 within the statutory period required when an employee is involuntary terminated. Plaintiff seeks payment of the unpaid wages plus liquidated damages.

On April 30, 2012, Defendant removed to this Court pursuant to diversity jurisdiction as Plaintiff is a citizen of the State of West Virginia, Defendant is a citizen of the State of Alabama, and more than $75,000 is in controversy. On May 21, Defendant filed its Answer to Plaintiff's Complaint and filed counterclaims. Defendant's counterclaims allege that Plaintiff breached his contract with Defendant by failing to comply with G-RAP's rules and that Defendant made certain contractual payments relating to the recruiting process despite Plaintiff's failure to comply with the rules of G-RAP, which resulted in unjust enrichment.

On December 11, 2012, Defendant Docupak filed its Motion for Summary Judgment. Plaintiff filed his Response to the Defendant's Motion for Summary Judgment on January 3, 2013. Defendant filed its Reply on January 16, 2013. Also on December 11, 2012, Plaintiff filed his Motion for Partial Summary Judgment on both counts of the Defendant's Counterclaims. Defendant filed its Response to Plaintiff's Motion for Partial Summary

Judgment on January 2, 2013. Plaintiff filed his Reply on January 16, 2013.

## IV. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* **FED. R. CIV. P. 56.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Anderson***, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. **FED. R. CIV. P. 56(c)**; ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the

5

same standards of review. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment–even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.3d 245 (4th Cir. 1967); *see also* **Anderson**, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

## V. Discussion

### A. Defendant's Motion for Summary Judgment

Defendant argues that Plaintiff's WPCA claim fails for two reasons: (1) Plaintiff was an independent contractor, not an employee, and (2) Plaintiff did not perform the services for which Defendant contracted him. Defendant contends that summary judgment is appropriate as there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.

West Virginia's WPCA provides that "[w]henever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours." **W. VA. CODE § 21-5-4(b).** The WPCA also provides that "[i]f a person, firm or corporation fails to pay an employee wages as required . . . such person, firm or corporation shall, in addition to the amount which was

6

unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages."

    1. Defendant's Argument that Plaintiff was an Independent Contractor

Defendant argues that Plaintiff's WPCA claim must fail as a matter of law because the undisputed evidence shows that Plaintiff was an independent contractor and not an employee. Plaintiff argues that he was an "employee" under the WPCA and that genuine issues as to material facts exist, precluding summary judgment. Because Defendant argues that Plaintiff was an independent contractor, the Court must first analyze whether Plaintiff was, in fact, an independent contractor. Under West Virginia law, an independent contractor is determined by four factors: selection and engagement of the servant, the method of compensation, the right to fire, and the power of control, but the power of control is "determinative." **Burless v. W. Va. Univ. Hosps., Inc.**, 601 S.E.2d 85, 91 (W. Va. 2004); *see also* **Shaffer v. Acme Limestone Co., Inc.**, 524 S.E.2d 688, 695 (W. Va. 1999). "The power of control 'factor refers to control over the means and method of performing the work.'" **Shaffer**, 524 S.E.2d at 696 (quoting **McDonald v. Hampton Training Sch. for Nurses**, 486 S.E.2d 299, 301 (Va. 1997)). The West Virginia Supreme Court of Appeals also held that "'an owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract-including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work-without changing the relationship from that of owner

and independent contractor, or [changing] the duties arising from that relationship.'" ***Shaffer***, 524 S.E.2d at 896 (collecting cases of numerous courts that have held the same) (citations omitted).

In this case, Defendant contracted with Plaintiff solely to provide recruiting services for the Air National Guard. Defendant has made a prima facie showing that Plaintiff was an independent contractor. Defendant provided evidence showing that it did not dictate the days of the week or the hours per day Plaintiff was required to work. ([Doc. 37-5], p. 12, 19). Plaintiff determined his own work hours, the days he would work, the location he would work from, and the style and method he would use to recruit. ([Doc. 37-5], p. 12-14). Plaintiff filed tax returns as an independent contractor as well, and he received a 1099 instead of a W-2 ([Doc. 37-5], p. 11). Plaintiff did not have a supervisor, a set work schedule, or an employee handbook, and Plaintiff did not receive performance evaluations. ([Doc. 37-5], p. 12-13). Plaintiff also admits that Defendant did not control his day-to-day activities. ([Doc. 37-5], p. 13). Therefore, Defendant has presented a prima facie case that Plaintiff was an independent contractor and Defendant did not retain control to determine the means and methods of Plaintiff's performance of the contract.

Therefore, to defeat summary judgment, Plaintiff must present relevant evidence involving Defendant's control of Plaintiff's recruiting efforts. Plaintiff offered evidence to present a genuine issue of material fact regarding whether Plaintiff was an independent contractor or an employee. First, Plaintiff offered evidence that Defendant maintained an administrative site where Plaintiff, in order to receive compensation for his recruits, had to enter information regarding the recruit, such as the recruit's name and social

security number. ([Doc. 37-4], p. 6-7). Then, Defendant used the information to verify with the Air National Guard that the recruit had in fact enlisted. ([Doc. 37-4], p. 8). Defendant validated the data to decide whether or not Plaintiff had complied with his contractual obligation, thus justifying payment. *Id.* Second, Plaintiff also testified in his deposition that Defendant offered training regarding how to speak with the potential recruits, an overview of the G-RAP program, and a review of G-RAP's guidelines. ([Doc. 37-5], p. 13). Last, Plaintiff testified in his deposition that Defendant exercised control because it provided Plaintiff with a "New Hire Kit," including two polo shirts that said "Guard Recruiting Assistant" and 200 starter business cards. ([Doc. 37-5], p. 13-14). Plaintiff argues that his proffered evidence creates a genuine issue of material fact as to whether Plaintiff is an independent contractor or an employee. Defendant and Plaintiff have presented evidence that creates conflicting inferences and "reasonable men might reach different conclusions" as to Plaintiff's alleged independent contractor status. **Phoenix Sav. & Loan, Inc.**, 381 F.3d 245. Accordingly, summary judgment is not appropriate.

    2. Defendant's Argument that Plaintiff was not Entitled to Payment or Damages Because He Violated G-RAP Rules

Defendant argues that Plaintiff is not entitled to any payment or damages because he did not perform the duties that Defendant contracted with him to perform. Defendant contends that Plaintiff admitted he would take credit for the potential airmen even if they had already met with the recruiter prior to their first meeting with Plaintiff. ([Doc. 37-1], p. 14). Also, Defendant offered sworn declarations from five out of twenty-six recruits that were allegedly initially recruited by a West Virginia Air National Guard

9

recruiter, but then contacted by Plaintiff to G-RAP them.  ([Doc. 37-5], 78-81, 94-95, 100-01, 106-10).  Defendant argues this was in clear violation of G-RAP's procedures.

In response, Plaintiff contends that a genuine issue of fact exists as to whether he violated G-RAP's guidelines in recruiting the twenty-six individuals at issue.  In Plaintiff's deposition, he stated that he would not "take credit for someone that [he] had no involvement with." ([Doc. 37-5], p. 21).  Plaintiff also stated that he recruited "within the guidelines of Docupak." *Id.* at 22.  Thus, Plaintiff's sworn deposition testimony conflicts with the sworn statements of several recruits that he claimed credit for through the G-RAP program.

In this case, a genuine issue of fact exists because the evidence is conflicting, and a reasonable jury could return a verdict for the non-moving party.  See **Anderson**, 477 U.S. at 248.  In determining whether Plaintiff violated G-RAP's guidelines, the court would necessarily have to make credibility determinations, weigh the evidence, and draw inferences from the facts.  These are jury functions.  Accordingly, the Court denies Defendant's Motion for Summary Judgment.

**B.  Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment upon Count I and Count II of the Defendant's Counterclaims.

1. Count I- Breach of Contract

To establish a breach of contract, a party must establish four elements: (1) that a valid, enforceable contract exists; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the

contract; and (4) that the plaintiff has been injured as a result of a breach. *See Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (stating the four elements to establish a breach of contract); *see also Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 749 (N.D.W. Va. 2012) ("In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach."). The Defendant and Plaintiff agree that they were parties to a valid contract. ([Doc. 37-2], p. 8). Plaintiff also admits that a term of the contract was Plaintiff's compliance with the rules of the G-RAP program. ([Doc. 8], p. 5; [Doc. 12], p. 1). However, the parties strongly disagree on whether Plaintiff breached the contract and if so, whether Defendant suffered any damages.

First, genuine issues of material fact exist regarding whether Plaintiff breached the contract. Although Plaintiff admits that a term of the contract was Plaintiff's compliance with the rules of the G-RAP program, Plaintiff contends that he fully complied with all of the rules of G-RAP and properly recruited potential airmen. ([Doc. 37-5], p. 21-22). However, Defendant contends that Plaintiff claimed credit for the recruited individuals after they had already been recruited through other individuals in the West Virginia Air National Guard. Thus, there are genuine issues of material fact, and the Court cannot determine as a matter of law whether Plaintiff breached the contract with Defendant. Additionally, credibility determinations and the drawing of legitimate inferences from the facts will need to be made to determine whether there was a breach of contract. These are jury functions, not those of a judge. *See*

***Anderson***, 477 U.S. at 253.

Second, the parties also dispute whether Defendant has any damages. Plaintiff primarily argues that he is entitled to summary judgment on Defendant's breach of contract claim because Defendant has failed to establish that it has suffered any damages as a result of an alleged breach. In support of this argument, Plaintiff contends that Defendant "received administrative fees as a consequence of Plaintiff's work and it has not notified the USA of any intention of returning those fees; [and] it was completely reimbursed for every payment made to the Plaintiff . . . ." ([Doc. 38-1], p. 10).

Defendant argues that it suffered damages because it paid $30,000 to the Plaintiff for recruits that were recruited by methods in breach of the contract. Although Defendant admits that it was fully reimbursed the $30,000 from the United States government and also received a $345 administration fee per recruit, Defendant argues it will repay the government the aforementioned sums. However, Defendant has not repaid any money to government at this point, and Defendant has not assigned any of its claims to the government. Defendant argues that it is "not required to repay the government until there is a decision that the government overpaid." ([Doc. 41], p. 6).

Regardless of whether Defendant produced evidence of monetary losses or damages, Defendant may still be entitled to nominal damages if proven. ***Harper v. Consol. Bus Lines***, 185 S.E.22d, 230 (W. Va. 1936 (citation omitted) ("Nominal damages arise where there is a breach of a duty owed the plaintiff or an infraction of his right, though the amount of actual damages is not shown."). A plaintiff may recover nominal damages in a contract action "[w]here an actionable wrong by the defendant is

shown." **Harper**, 185 S.E. at 231 (citing **Watts v. Norfolk & W.R.Co.**, 19 S.E. 521 (W. Va. 1894)). Therefore, genuine issues of fact exist regarding whether Defendant is entitled to at least nominal damages. Accordingly, Plaintiff's motion for partial summary judgment on Count I of Defendant's counterclaim is denied.

    2. Count II- Unjust Enrichment

Under West Virginia law, "[i]t is generally recognized in the law of restitution that if one party pays money to another party (the payee) because of a mistake of fact that a contract or other obligation required such payment, the party making the payment is entitled to repayment of the money from the payee." Syl. Pt. 4, **Prudential Ins. Co. of Am. v. Couch**, 376 S.E.2d 104 (W. Va. 2009). The Supreme Court of Appeals of West Virginia also explained the theory's underlying principle that "it would be unjust to allow a person to retain money on which he had no valid claim. He would be unjustly enriched thereby, when in equity and justice it should be returned to the payor." **Id.** at 108.

As with Count I of Defendant's counterclaim, genuine issues of fact exist that preclude summary judgment. As discussed above, there are numerous factual issues in dispute regarding whether Defendant paid money to Plaintiff "because of a mistake of fact that a contract or other obligation required such payment." See Syl. Pt. 4, **Couch**, 376 S.E.2d 104.

### VI. Conclusion

For the foregoing reasons, this Court hereby **DENIES** the Plaintiff's Motion for Partial Summary Judgment and **DENIES** the Defendant's Motion for Summary

Judgment.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 27, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE